IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Criminal Case No. 22-cr-00186-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSHUA WILLIS,

    Defendant.

## ORDER

This matter is before the Court on Defendant Joshua Willis's Motion to Dismiss the Indictment Under the Second Amendment, ECF No. 25. As set forth below, the Court DENIES the motion.

### I.    BACKGROUND

Defendant was indicted on one count of possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), ECF No. 1. Under § 922(g)(1), it is "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." Defendant moves to dismiss the indictment, arguing that § 922(g)(1) is no longer viable following the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111

(2022). Specifically, Defendant contends that even though he is a felon, the Second Amendment protects his right to bear arms, and the government cannot satisfy its burden to show a longstanding American tradition prohibiting felons from possessing firearms. ECF No. 25 at 1. Defendant also argues that § 922(g)(1) is unconstitutional as applied to him because his prior felony convictions were for non-violent offenses. *Id*. at 2. The government contends that *Bruen* does not alter prior precedent determining that felons retain no Second Amendment rights, and that even if *Bruen* had impacted that conclusion, § 922(g)(1) remains constitutional under the *Bruen* historical analysis framework. ECF No. 31 at 1. The government further contends that historical tradition dictates that unvirtuous individuals, such as Defendant, should be disarmed, and therefore that § 922(g)(1) is constitutional as applied. *Id*.

## II.     DISCUSSION

The Second Amendment of the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *Bruen*, the Supreme Court held that—consistent with *District of Columbia v. Heller*, 554 U.S. 570 (2008) *and McDonald v. City of Chicago*, 561 U.S. 742 (2010)—the Second and Fourteenth Amendments protect the right of law-abiding citizens to carry a handgun for self-defense outside of the home. *Bruen*, 142 S. Ct. at 2122. The Supreme Court determined that New York's licensing regime for public carry was unconstitutional because only applicants who could "demonstrate a special need for self-defense" would be granted a license for public carry.

*Id*. at 2156. The *Bruen* majority delineated the analysis a court must conduct when evaluating a Second Amendment challenge:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id*. at 2129–30. Justice Alito, in his concurrence, clarified:

> Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns.

*Id*. at 2157 (Alito, J., concurring).

### A.     Section 922(g)(1) Survives the *Bruen* Test

Following the issuance of *Bruen*, numerous courts throughout the country have considered the facial constitutionality of § 922(g)(1). *See, e.g.*, *United States v. Carpenter*, 1:21-CR-00086-DBB, 2022 WL 16855533, at *4 n. 39 (D. Utah Nov. 10, 2022) (collecting cases). In each case, the deciding court upheld § 922(g)(1) as constitutional, including the Third Circuit (the only circuit court to directly address this issue post-*Bruen*) and the District of Colorado. *See, e.g.*, *Range v. Att'y Gen. United States*, No. 21-2835, 2022 WL 16955670, at *16 (3d Cir. Nov. 16, 2022) (finding "our Nation's tradition of firearm regulation permits the disarmament of those who committed felony or felony-equivalent offenses"); *United States v. Gray*, No. 22-CR-00247-CNS, 2022 WL 16855696, at *3 (D. Colo. Nov. 10, 2022) ("The Court finds that § 922(g)(1), survives post-*Bruen*."). This Court sees no reason to part with the clear weight of authority on this issue. For this reason,

and for the reasons articulated by the Honorable Charlotte N. Sweeney in *United States v. Gray*, No. 22-CR-00247, the Court finds that the government has satisfied its burden to put forth historical evidence that the people who adopted the Second Amendment would have understood it to permit prohibition of the possession of firearms by felons. *Bruen*, 142 S. Ct. at 2136. Thus, § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation," and the statute is not unconstitutional on its face. *Id*. at 2130.

      B.      Section 922(g)(1) is Not Unconstitutional As Applied

The Court next considers whether § 922(g)(1), as applied to Defendant, is consistent with the Second Amendment's text and historical understanding. *Bruen*, 142 S. Ct. at 2131. Defendant argues that § 922(g)(1) "could only be applied to persons who have a prior qualifying conviction that is violent and indicates a proclivity for misusing firearms in a way that poses a danger to public safety." ECF No. 25 at 24. Thus, Defendant argues, because his prior felony convictions are all nonviolent, § 922(g)(1) is unconstitutional as applied to him. The government urges this Court to reject such a narrow application, arguing that even if Defendant's prior felony convictions were not dangerous, historical tradition exists for disarming him because, as a felon, he is unvirtuous. ECF No. 31 at 10.

The Court finds that the government has satisfied its burden to demonstrate that Founding-era precedent exists for disarming nonviolent individuals. "[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous

4

citizens.'" *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010); *see also* Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 491–92 (2004) ("Historians have long recognized that the Second Amendment was strongly connected to the republican ideologies of the Founding Era, particularly the notion of civic virtue."); Saul Cornell, "*Don't Know Much About History": The Current Crisis in Second Amendment Scholarship*, 29 N. Ky. L Rev. 657, 679 (2002) ("A liberal individualist idea that each person enjoyed basic rights existed alongside a republican conception of citizenship that held that only those capable of displaying the requisite civic virtue were entitled to the full panoply of rights."); David Yassky, *The Second Amendment: Structure, History, and Constitutional Change*, 99 Mich. L. Rev. 588, 626–27 (2000) ("The average citizen whom the Founders wished to see armed was a man of republican virtue—a man shaped by his myriad ties to his community, the most important for this purpose being the militia."). Exclusion of specific language that the Second Amendment only applies to virtuous citizens "would also be consistent with the understanding of other civic rights at the time of the founding." *United States v. Tooley*, 717 F. Supp. 2d 580, 591 (S.D.W. Va. 2010), *aff'd*, 468 F. App'x 357 (4th Cir. 2012) (unpublished).

Several courts of appeal have also found that unvirtuous citizens are properly excluded from the Second Amendment's rights. *See, e.g.*, *Range*, 2022 WL 16955670, at *14 (reviewing the historical record and concluding that "[n]on-violent individuals were repeatedly disarmed between the seventeenth and nineteenth centuries because legislatures determined that those individuals lacked respect for the rule of law and thus

5

fell outside the community of law-abiding citizens"); *United States v. Carpio-Leon*, 701 F.3d 974, 979–80 (4th Cir. 2012); *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010); *United States v. Rene E.*, 583 F.3d 8, 15 (1st Cir. 2009). While the Court need not accept this theory outright, its support among courts and scholars serves as persuasive evidence that the scope of the Second Amendment was understood to exclude more than just individually identifiable dangerous individuals.[1]

Under the circumstances currently presented, this Court declines to hold that § 922(g)(1) violates the Second Amendment as applied to Defendant. By his Motion, Defendant has preserved this issue for future decision by higher courts.

### III.   CONCLUSION

Accordingly, Defendant's Motion to Dismiss the Indictment Under the Second Amendment, ECF No. 25, is DENIED.

DATED:  November 23, 2022.

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge

---

[1] The Court is further persuaded by the historical analysis performed by the Court of Appeals for the D.C. Circuit in *Medina v. Whitaker*, 913 F.3d 152, 158–60 (D.C. Cir. 2019), which "look[ed] to tradition and history" and concluded that "the historical evidence and the Supreme Court's discussion of felon disarmament laws leads us to reject the argument that non-dangerous felons have a right to bear arms." *Id.* at 158–59.